**UNITED STATES DISTRICT COURT**

**CENTRAL DISTRICT OF CALIFORNIA**

MARIA DE LA CRUZ YANES,       )    NO. CV 11-9069-E
                      )
          Plaintiff,      )
                      )
   v.               )    **MEMORANDUM OPINION**
                      )
MICHAEL J. ASTRUE, COMMISSIONER  )
OF SOCIAL SECURITY ADMINISTRATION, )
                      )
         Defendant.      )
_____)

**PROCEEDINGS**

    Plaintiff filed a Complaint on November 1, 2011, seeking review of the Commissioner's denial of benefits.  The parties filed a consent to proceed before a United States Magistrate Judge on February 3, 2012.

    Plaintiff filed a motion for summary judgment on April 23, 2012. Defendant filed a cross-motion for summary judgment on May 23, 2012. The Court has taken both motions under submission without oral argument.  <u>See</u> L.R. 7-15; "Order," filed November 4, 2011.

**BACKGROUND**

Plaintiff, a former single needle sewing machine operator, asserted disability since February 27, 2007, based primarily on alleged "T.K.R. [total knee replacement], lower back, hip, legs, knees, and heels pain, chondromalacia grade 4, fatigue, [and] osteoarthritis on right knee" (Administrative Record ("A.R.") 52, 141-47, 161, 173).  The Administrative Law Judge ("ALJ") examined the medical record and heard testimony from Plaintiff and a vocational expert (A.R. 12-210, 217-703).

The ALJ found that Plaintiff suffers from severe "degenerative disc disease of the lumbar spine, diabetic neuropathy, and osteoarthritis of the right knee," but retains the residual functional capacity to perform "the full range of light work" (A.R. 14-20).[1]  The ALJ found not credible Plaintiff's testimony regarding the alleged severity of her physical problems (A.R. 16-19).  The ALJ also found that a person having the capacity to perform the full range of light work could perform Plaintiff's past relevant work as a single needle

---

[1]     Light work involves lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds. Even though the weight lifted may be very little, a job is in this category when it requires a good deal of walking or standing, or <u>when it involves sitting most of the time with some pushing and pulling of arm or leg controls</u>.  To be considered capable of performing a full or wide range of light work, you must have the ability to do substantially all of these activities.

20 C.F.R. § 416.967(b) (emphasis added).

sewing machine operator, as that work is generally performed (A.R. 20
(adopting vocational expert testimony at A.R. 43 (describing
exertional requirements for the job as "light"))).  Accordingly, the
ALJ denied disability benefits (A.R. 12, 20-21).  The Appeals Council
denied review (A.R. 1-3).

Plaintiff argues that the ALJ: (1) erred in rejecting the opinion
of Plaintiff's treating rheumatologist; (2) erred in discounting
Plaintiff's credibility; and (3) lacked substantial evidence to
support the finding that Plaintiff can perform her past relevant work
See Plaintiff's Motion, pp. 3-10.

## STANDARD OF REVIEW

Under 42 U.S.C. section 405(g), this Court reviews the
Administration's decision to determine if:  (1) the Administration's
findings are supported by substantial evidence; and (2) the
Administration used correct legal standards.  See Carmickle v.
Commissioner, 533 F.3d 1155, 1159 (9th Cir. 2008); Hoopai v. Astrue,
499 F.3d 1071, 1074 (9th Cir. 2007).  Substantial evidence is "such
relevant evidence as a reasonable mind might accept as adequate to
support a conclusion."  Richardson v. Perales, 402 U.S. 389, 401
(1971) (citation and quotations omitted); see also Widmark v.
Barnhart, 454 F.3d 1063, 1067 (9th Cir. 2006).

This Court "may not affirm [the Administration's] decision simply
by isolating a specific quantum of supporting evidence, but must also
consider evidence that detracts from [the Administration's]

1  conclusion." Ray v. Bowen, 813 F.2d 914, 915 (9th Cir. 1987)

2  (citation and quotations omitted); see Lingenfelter v. Astrue, 504

3  F.3d 1028 (9th Cir. 2007) (same).  However, the Court cannot disturb

4  findings supported by substantial evidence, even though there may

5  exist other evidence supporting Plaintiff's claim.  See Torske v.

6  Richardson, 484 F.2d 59, 60 (9th Cir. 1973), cert. denied, 417 U.S.

7  933 (1974); Harvey v. Richardson, 451 F.2d 589, 590 (9th Cir. 1971).

8

9                              **DISCUSSION**

10

11      After consideration of the record as a whole, Defendant's motion

12  is granted and Plaintiff's motion is denied.  The Administration's

13  findings are supported by substantial evidence and are free from

14  material[2] legal error.  Plaintiff's contrary contentions are

15  unavailing.

16

17  **I.   Substantial Evidence Supports the Conclusion Plaintiff Can Work.**

18

19      Substantial medical and vocational evidence supports the ALJ's

20  conclusion that Plaintiff is not disabled.  The ALJ properly relied on

21  this evidence to deny disability benefits.

22  ///

23  ///

24  ///

25      **A.   Summary of the Medical Record**

26  _____

27      [2]   The harmless error rule applies to the review of
    administrative decisions regarding disability.  See McLeod v.

28  Astrue, 640 F.3d 881, 886-88 (9th Cir. 2011); Burch v. Barnhart,
    400 F.3d 676, 679 (9th Cir. 2005).

                                    4

Plaintiff's primary care physician, Dr. Gary Brown, treated Plaintiff since 1996 for hypertension, high cholesterol, diabetes mellitus, and degenerative joint disease in Plaintiff's knees.  See A.R. 259-68, 271-78, 283, 290-93, 296-308, 311-66, 557-58, 606-07 (treatment notes).  Lab work for Plaintiff showed high triglycerides, high glucose, and some high cholesterol readings (A.R. 367-74, 378-86, 389-90, 393-94, 398-415, 420-23, 425-27, 429, 436, 438-39, 441-45, 450).  A treatment note from March 2006 indicates Plaintiff's blood sugar is "controlled when checked at home" (A.R. 298).

On March 19, 2007, Plaintiff reportedly told Dr. Brown that Plaintiff thought she needed to be disabled (A.R. 283).  Dr. Brown observed Plaintiff using a cane on August 21, 2008, when Plaintiff asked the doctor to fill out disability forms (A.R. 259).  On January 30 and May 28, 2009, Dr. Brown noted that Plaintiff continued to believe she is disabled (A.R. 557, 606).  Dr. Brown never opined that Plaintiff is disabled.

Dr. Brown referred Plaintiff to rheumatologist Dr. Thomas Romano in 2006 for an evaluation of Plaintiff's right knee pain (A.R. 295). Dr. Romano had seen Plaintiff for her right knee in 2004, and had diagnosed osteoarthritis (A.R. 295; see also A.R. 309-10 (earlier treatment records); A.R. 463 (x-ray report from 2004 showing mild degenerative changes to the right knee)).  Plaintiff reported to Dr. Romano on June 29, 2006, that Plaintiff had fallen seven or eight weeks ago and had been experiencing increased pain and swelling in her right knee (A.R. 295).  Dr. Romano once again diagnosed osteoarthritis in the right knee (id.).  Dr. Romano recommended physical therapy,

corticosteroid injections, and daily medication (Orudis).  (Id.).  Dr.
Romano gave Plaintiff injections on August 8, 2006, February 14, 2007,
March 1, 2007, and March 8, 2007 (A.R. 287-89, 294).

     On January 30, 2008, orthopaedic surgeon Dr. Luigi Galloni
performed arthroscopic surgery on Plaintiff's right knee to treat
Plaintiff's osteoarthritis, chondromalacia Grade IV medial femoral
condyle and medial tibial plateau, and a tear of the medial meniscus
(A.R. 221-23).[3]  After the surgery, Dr. Galloni started Plaintiff on
physical therapy (A.R. 220).  On March 24, 2008, Dr. Galloni reported
that Plaintiff had not been improving since the surgery and that
nothing more could be done, except Plaintiff should continue with
exercises and physical therapy (A.R. 219).  Dr. Galloni indicated that
Plaintiff eventually would require a total knee arthroplasty, but that
Plaintiff was overweight and too young for a total knee replacement

---

[3]     On initial examination in July 2007, Dr. Galloni
reported that Plaintiff had decreased range of motion in the
right knee with tenderness to palpation of the medial and lateral
joint line and some crepitus at range of motion (A.R. 230).  X-
rays showed a collapse of the medial compartment of the right
knee, and an MRI showed a tear to the medial meniscus of the
right knee with degeneration of the cartilage of the medial
compartment (A.R. 231; see also A.R. 458-59 (MRI report from June
12, 2007)).  Dr. Galloni diagnosed osteoarthritis of the right
knee and indicated that Plaintiff may be in need of a right knee
replacement (A.R. 231).

     An MRI of Plaintiff's lumbosacral spine dated December 4,
2007, showed mild-to-moderate hypertrophy of the facet joints,
which Dr. Galloni opined "does not seem to be the situation that
is causing the patient such problems" (A.R. 225-27, 231).
Earlier x-rays of the lumbar spine dated February 14 and
August 20, 2007, showed only evidence of "spasm" and a normal
lumbar spine, respectively (A.R. 229, 457).

(A.R. 219).  By May 5, 2008, Dr. Galloni reported "some minimal improvement" by Plaintiff post-surgery (A.R. 218).  Plaintiff was to continue with her exercises (A.R. 218).  By August 4, 2008, Dr. Galloni reported that Plaintiff "eventually" had some improvement with the arthroscopy, but was still having "some problems and pain" (A.R. 217).

Plaintiff underwent consultative examinations, which found no disabling impairments.  Consultative examiner Dr. A. Rahman Khaledy Sultan prepared a Complete Internal Medicine Evaluation of Plaintiff dated December 2, 2008 (A.R. 520-25).  Plaintiff reported a history of back pain, high blood pressure, diabetes, high cholesterol, and right knee pain, and Plaintiff also reported her January 2008 knee surgery (A.R. 520-21).  Dr. Sultan stated that Plaintiff drove herself to the office, and the doctor observed that Plaintiff had no difficulty getting into and out of a chair (A.R. 520-21).

On examination, Dr. Sultan found moderate limitation of back movement, with "no loss of lordosis," "no paralumbar muscle spasm," "no tenderness to palpation," and negative straight leg raising tests (A.R. 523).  Dr. Sultan also found Plaintiff's right knee had osteoarthritis, but range of motion was intact (A.R. 524).  Dr. Sultan noted no other issues (A.R. 520-24).  Dr. Sultan ordered lumbar spine and right knee x-rays, which revealed mild disc degeneration at

///

///

the L2-L3 vertebrae and generalized osteopenia,[4] and mild to moderate osteoarthritis in the right knee (A.R. 524, 526).

Dr. Sultan opined that Plaintiff could perform medium work, _i.e._, she could lift and carry 50 pounds occasionally, 25 pounds frequently, could stand or walk six hours in an eight-hour day, and could sit for six hours in an eight-hour day with normal breaks (A.R. 525).  Dr. Sultan imposed no postural, manipulative, visual, communicative or environmental limitations (A.R. 525).  Dr. Sultan stated that Plaintiff would not need a cane for short distances, but Plaintiff told Dr. Sultan she uses a cane for long distances (A.R. 525).

Consultative psychologist Rosa Colonna examined Plaintiff and prepared a Psychological Evaluation of Plaintiff dated January 7, 2009 (A.R. 529-33). Dr. Colonna observed that Plaintiff was overweight/obese, and ambulated with a cane (A.R. 529, 533).  On examination, Plaintiff's intellectual functioning fell in the borderline to low-average range (A.R. 531-32).  Dr. Colonna assigned

///
///
///
///
///
///

---

[4] Osteopenia is a reduction in bone volume to below normal levels.  See Medline Plus Medical dictionary entry for "osteopenia," available online at www.merriam-webster.com/medlineplus/osteopenia (last visited July 5, 2012).

plaintiff a GAF score of 65.[5]  Dr. Colonna opined that Plaintiff would

be able to understand, remember, and carry out short and simplistic

instructions without difficulty.  She would have a mild inability to

understand, remember, and carry out detailed instructions.  Plaintiff

could make simplistic work-related decisions without special

supervision.  Dr. Colonna found no other limitations.  See A.R. 533.


    Plaintiff thereafter returned to Dr. Romano with complaints of

bilateral knee pain (A.R. 596, 598, 603, 608, 611).  Dr. Romano

examined Plaintiff on March 9, 2009, and found marked crepitus and

decreased range of motion in the right knee, a fairly normal range of

motion in the left knee, and some discomfort in Plaintiff's right heel

(A.R. 611).  Dr. Romano opined that Plaintiff has severe

osteoarthritis in her right knee and probable Achilles tendinitis in

her right heel (A.R. 611).[6]  Dr. Romano stated that Plaintiff's

arthroscopic surgery did not help Plaintiff's right knee, nor did

treatment with multiple NSAIDS, physical therapy, injections of

corticosteroids and injections of Euflexxa (A.R. 611).  Dr. Romano

agreed with Dr. Galloni that Plaintiff was too young for a right total

_____

    [5]    Clinicians use the GAF scale to report an individual's
overall level of functioning.  "A GAF of 61-70 indicates 'some
mild symptoms (e.g., depressed mood and mild insomnia) or some
difficulty in social, occupational, or school functioning (e.g.,
occasional truancy, or theft within the household), but generally
functioning pretty well, has some meaningful interpersonal
relationships.'"  Siegel v. Astrue, 2009 WL 2365693, at *6 n.6
(E.D. Cal. July 31, 2009) (quoting from American Psychiatric
Association, Diagnostic and Statistical Manual of Mental
Disorders 32 (4th Ed. 1994)).

    [6]    A week later, podiatrist Dr. Stanley Mathis diagnosed
tendinitis (A.R. 610).  Dr. Mathis prescribed physical therapy
and heel lifts for both of Plaintiff's feet (A.R. 610).

knee replacement (A.R. 611).  Dr. Romano prescribed Lyrica, a Flector
Patch, and additional Euflexxa injections (A.R. 611).  Dr. Romano
injected Plaintiff's right knee with Euflexxa on April 23 and May 7,
2009, and her left knee with Euflexxa on July 10, 20, and 27, 2009
(A.R. 603-05, 608-09).

On September 23, 2009, Plaintiff reported that her right heel was
swollen with pain, but that Euflexxa injections had helped her left
knee (A.R. 598).  Dr. Romano noted right patellar tendinitis helped by
a patch (A.R. 598).  On January 26, 2010, Plaintiff reported that the
injections had helped, she was happy with Celebrex, and she did not
need additional injections at that time (A.R. 596).  Plaintiff
reported worse pain when bending her knees for an extended time and
pain moving up her leg when walking, however (A.R. 596).

B.  **Analysis**

In determining that Plaintiff retains the residual functional
capacity to perform the full range of light work, the ALJ gave weight
to Dr. Sultan's internal medicine evaluation, but ultimately assigned
Plaintiff a more restrictive capacity than Dr. Sultan found to exist.
See A.R. 16, 19 ("The undersigned gives significant weight to the
above opinions; however, notes that the residual functional capacity
finding contained herein is more restrictive than any other opinion
throughout the record.").  The ALJ stated, "the undersigned finds in
light of the claimant's medical history she is limited in her ability
to lift and/or carry, and these limitations are reflected in the
[residual functional capacity] identified above" (A.R. 18).

1    The ALJ assigned no mental restrictions, citing Dr. Colonna's

2  assessment that Plaintiff would have only mild limitations in her

3  ability to carry out detailed instructions (A.R. 15).   The ALJ deemed

4  Plaintiff's mental condition non-severe because the condition would

5  cause no more than a minimal limitation on Plaintiff's ability to

6  perform basic mental work activities.   See A.R. 15; see also 20 C.F.R.

7  §§ 404.1521, 416.921 (defining non-severity).   Plaintiff does not

8  appear to dispute this conclusion.

9

10    The consultative examiners' findings constitute substantial

11  evidence supporting the ALJ's decision.   See Tonapetyan v. Halter, 242

12  F.3d 1144, 1149 (9th Cir. 2001) (consulting examiner's opinion is

13  substantial evidence that can support an ALJ's finding of

14  nondisability); see also Orn v. Astrue, 495 F.3d 625, 632 (9th Cir.

15  2007) (examining physician's independent clinical findings are

16  substantial evidence).

17

18    Additional support for the ALJ's decision is found in the

19  opinions of the non-examining State agency physician.   See Tonapetyan

20  v. Halter, 242 F.3d at 1149 (non-examining physician's opinion may

21  constitute substantial evidence when opinion is consistent with

22  independent evidence of record); Lester v. Chater, 81 F.3d 821, 831

23  (9th Cir. 1995) (same).   State agency physician P.N. Ligot completed a

24  Physical Residual Functional Capacity Assessment form for Plaintiff

25  dated January 26, 2009 (A.R. 548-52).   Like Dr. Sultan, Dr. Ligot

26  found that Plaintiff has the capacity to perform medium work.   Id.

27  ///

28  ///

11

1    To the extent the record contains conflicting medical evidence,

2    it was the prerogative of the ALJ to resolve the conflicts.  See Lewis

3    v. Apfel, 236 F.3d 503, 509 (9th Cir. 2001).  Where, as here, the

4    evidence "is susceptible to more than rational interpretation," the

5    Court must uphold the administrative decision.  See Andrews v.

6    Shalala, 53 F.3d 1035, 1039-40 (1995); accord Thomas v. Barnhart, 278

7    F.3d 947, 954 (9th Cir. 2002); Sandgathe v. Chater, 108 F.3d 978, 980

8    (9th Cir. 1997).

9

10    Having found that Plaintiff retains the residual functional

11    capacity to perform the full range of light work, the ALJ properly

12    relied on the Dictionary of Occupational Titles ("DOT") and vocational

13    expert testimony to conclude that Plaintiff can perform her past

14    relevant work as a single needle sewing machine operator as generally

15    performed (A.R. 20).  The DOT listing for lockstitch-machine operator

16    (garment) (alternatively titled "single-needle operator") describes

17    the job as requiring light exertion.  See DOT 786.682-170; see also

18    A.R. 43 (vocational expert testifying that the normal exertional level

19    for a sewing machine operator is light).  This evidence supports the

20    ALJ's conclusion that Plaintiff can work.  See Social Security Ruling

21    ("SSR") 82-62 ("The [residual functional capacity] to meet the

22    physical and mental demands of jobs a claimant has performed in the

23    past (either the specific job a claimant performed or the same kind of

24    work as it is customarily performed throughout the economy) is

25    generally a sufficient basis for a finding of 'not disabled.'. . .

26    Determination of the claimant's ability to do [past relevant work]

27    requires a careful appraisal of . . . in some cases, supplementary or

28    corroborative information from other sources such as employers, the

<u>Dictionary of Occupational Titles</u>, etc., on the requirements of the work as generally performed in the economy."); <u>see also</u> <u>Kennedy v. Astrue</u>, 2012 WL 2131870, at *12 (D. Nev. May 4, 2012), <u>adopted</u>, 2012 WL 2131458 (D. Nev. June 11, 2012) (DOT listing and vocational expert testimony that past relevant work required light exertion amply supported ALJ's determination that a claimant who could perform a full range of light work was capable of performing the claimant's past relevant work).[7]

## II.  <u>The ALJ Did Not Materially Err in Evaluating Dr. Romano's Opinions.</u>

Plaintiff argues that the ALJ erred in rejecting the opinions of treating rheumatologist Dr. Romano.  <u>See</u> Plaintiff's Motion, pp. 3-7. Dr. Romano provided Plaintiff with a letter dated January 26, 2010, urging that Plaintiff's MediCal not be taken away (A.R. 584).  Dr. Romano also completed a Multiple Impairment Questionnaire dated February 10, 2010 (A.R. 586-93).  Dr. Romano diagnosed severe osteoarthritis in both knees and status post-arthroscopic debridement of the right knee, and gave Plaintiff a "poor" prognosis (A.R. 586). Dr. Romano reported clinical findings supposedly showing severe crepitus and decreased range of motion in both knees with positive McMurray in her right knee, and marked quadricep atrophy in her thighs bilaterally, and laboratory testing showing grade IV chondromalacia in both knees from x-rays, assertedly confirmed by the arthroscopic

---

[7]     Social Security rulings are binding on the Administration.  <u>See</u> <u>Terry v. Sullivan</u>, 903 F.2d 1273, 1275 n.1 (9th Cir. 1990).

surgery (A.R. 586-87).  Dr. Romano opined that Plaintiff's condition
causes severe pain in her knees, stiffness, and locking and buckling
of the knee (A.R. 587).  The pain reportedly is severe and constant,
worsened by prolonged rest and prolonged walking (A.R. 587).  Dr.
Romano ranked Plaintiff's pain and fatigue at nine on a scale of zero
to ten (A.R. 588).

Dr. Romano opined that Plaintiff would be able to sit one hour a
day and stand and walk less than one hour a day, and indicated that it
would be "necessary or medically recommended" that Plaintiff not sit
continuously or stand/walk continuously in a work setting (A.R. 588-
89).  Every 30 minutes, Plaintiff reportedly would need to get up and
move around for 15 minutes (A.R. 588-89).  Dr. Romano further opined
that Plaintiff could occasionally lift and carry less than five
pounds, and would have moderate upper extremity limitations (A.R. 589-
90).  Plaintiff was taking tramadol for her pain, which supposedly
causes drowsiness, and also was taking Celebrex (A.R. 590).  Dr.
Romano indicated that Plaintiff's symptoms would increase if she
worked, and that her condition would interfere with her ability to
keep her neck in a constant position (A.R. 590).  Dr. Romano opined
that Plaintiff would need to take unscheduled breaks every 15 minutes
for 30 minutes or more, and would be absent from work more than three
times each month (A.R. 591-92).  Dr. Romano indicated that Plaintiff
would need a job that permits ready access to a restroom (A.R. 592).
Dr. Romano stated, "Pt has failed numerous therapies.  She will
require bilateral total knee arthroplasties soon" (A.R. 592).
///
///

14

The ALJ considered, but gave "limited weight" to Dr. Romano's opinion (A.R. 19-20).  The ALJ explained:

> Dr. Romano opined that the claimant suffers from extreme
> limitations; however, his own progress reports fail to
> reveal the type of significant clinical and laboratory
> abnormalities one would expect if the claimant did, in fact,
> have such limitations and the doctor did not specifically
> address this weakness.  While Dr. Romano noted on
> examination in March 2009 that the claimant had decreased
> range of motion with crepitus, the remainder of progress
> notes until September 2009 consist only of reports that the
> claimant received injections to her knees.  In September,
> Dr. Romano asserted that the injections and pain patches
> "did help her knee."  The claimant did not return until
> January 2010, when Dr. Romano noted only mildly swollen and
> tender knees with joint space narrowing.  Furthermore, as
> noted above, the claimant admitted that the "injections
> helped and she is happy with the [anti-inflammatory] and
> does not need injections at this time."  The undersigned
> also finds that there is no medical evidence supporting
> limitations related to keeping the neck in a constant
> position, sitting for only [one] hour in an 8-hour workday;
> and requiring a job that permits ready access to the
> restroom.  Given the lack of objective support, Dr. Romano's
> assessment apparently relied quite heavily on the subjective
> report of symptoms and limitations provided by the claimant,
> and seemed to uncritically accept as true most, if not all,

1     of what the claimant reported.  Yet, as explained elsewhere

2     in this decision, there exist good reasons for questioning

3     the reliability of the claimant's subjective symptoms.

4

5  (A.R. 19-20 (internal citations omitted)).

6

7     The ALJ's stated reasons adequately support the rejection of Dr.

8  Romano's contradicted opinions regarding the severity of Plaintiff's

9  limitations.  See Valentine v. Commissioner, 574 F.3d 685, 692 (9th

10  Cir. 2009) (an ALJ must provide "specific, legitimate reasons" based

11  on substantial evidence in the record for rejecting a treating

12  physician's contradicted opinion); Orn v. Astrue, 495 F.3d at 631-33

13  (same).  First, the ALJ properly rejected Dr. Romano's opinions

14  regarding severity as unsupported by progress notes or clinical

15  findings.  See Bayliss v. Barnhart, 427 F.3d 1211, 1216 (9th Cir.

16  2005) (contradiction between treating physician's assessment and

17  clinical notes justifies rejection of assessment); Batson v.

18  Commissioner, 359 F.3d 1190, 1195 (9th Cir. 2004) ("an ALJ may

19  discredit treating physicians' opinions that are conclusory, brief,

20  and unsupported by the record as a whole . . . or by objective medical

21  findings"); Connett v. Barnhart, 340 F.3d 871, 875 (9th Cir. 2003)

22  (treating physician's opinion properly rejected where treating

23  physician's treatment notes "provide no basis for the functional

24  restrictions he opined should be imposed on [the claimant].").

25

26     Second, the ALJ properly rejected Dr. Romano's opinions as

27  reliant on Plaintiff's subjective complaints.  An ALJ is free to

28  disregard a treating physician opinion that is based on a claimant's

subjective complaints where the ALJ has properly discounted those
subjective complaints. <u>See</u> <u>Tonapetyan v. Halter</u>, 242 F.3d at 1149;
<u>Fair v. Bowen</u>, 885 F.2d 597, 605 (9th Cir. 1989) (disregarding opinion
premised on claimant's properly-discounted subjective complaints is a
specific, legitimate reason for rejecting a treating physician's
opinion); <u>see also</u> <u>Mattox v. Commissioner of Social Security</u>, 371 Fed.
App'x 740, 742 (9th Cir. 2010) ("a physician's opinion of disability
premised to a large extent upon the claimant's own accounts of his
symptoms and limitations may be disregarded where those complaints
have been properly discounted") (internal quotations and citations
omitted).[8]  As discussed below, the ALJ properly discounted
Plaintiff's subjective complaints.

**III.  <u>The ALJ Did Not Materially Err By Deeming Plaintiff's Testimony
Less Than Fully Credible.</u>**

Plaintiff argues that the ALJ did not properly assess Plaintiff's
testimony regarding her alleged limitations. <u>See</u> Plaintiff's Motion,
pp. 7-9.  An ALJ's assessment of a claimant's credibility is entitled
to "great weight." <u>Anderson v. Sullivan</u>, 914 F.2d 1121, 1124 (9th
Cir. 1990); <u>Nyman v. Heckler</u>, 779 F.2d 528, 531 (9th Cir. 1985).  The
discounting of a claimant's testimony regarding subjective symptoms
must be supported by specific, cogent findings.  <u>See</u> <u>Lester v. Chater</u>,
81 F.3d at 834; <u>see also</u> <u>Berry v. Astrue</u>, 622 F.3d 1228, 1234 (9th
Cir. 2010) (reaffirming same); <u>Varney v. Secretary of Health and Human</u>

---

[8]    The Court may cite to unpublished Ninth Circuit
opinions issued on or after January 1, 2007.  <u>See</u> U.S. Ct. App.
9th Cir. Rule 36-3(b).

Serv., 846 F.2d 581, 584 (9th Cir. 1988) (generally discussing specificity requirement); but see Smolen v. Chater, 80 F.3d 1273, 1282-84 (9th Cir. 1996) (indicating that ALJ must offer "specific, clear and convincing" reasons to reject a claimant's testimony where there is no evidence of malingering).[9]   Contrary to Plaintiff's argument, the ALJ stated sufficient reasons for deeming Plaintiff's testimony less than fully credible.

Plaintiff testified that she has problems walking.  Plaintiff said that she could walk only 10 minutes before needing rest (A.R. 46).  Plaintiff began using a cane in 2006, although a cane has never been prescribed for her (A.R. 47).  Plaintiff said she could sit for 20 to 30 minutes before having to get up, and stand for five minutes at most (A.R. 47-48).  Plaintiff said she lies down during the day when she takes her medication (A.R. 48).  Plaintiff testified that Dr. Romano told her that with the knee injections she would be able to walk and feel well, but she supposedly was not able to do so (A.R. 49).

In an undated Disability Report - Adult form, Plaintiff reported that she stopped working because she was limited to standing no more

---

[9]     In the absence of evidence of "malingering," most recent Ninth Circuit cases have applied the "clear and convincing" standard.  See, e.g., Molina v. Astrue, 674 F.3d 1104 (9th Cir. 2012); Taylor v. Commissioner, 659 F.3d 1228, 1234 (9th Cir. 2011); Valentine v. Commissioner, 574 F.3d at 693; Carmickle v. Commissioner, 533 F.3d 1155, 1160 (9th Cir. 2008); Lingenfelter v. Astrue, 504 F.3d 1028, 1036 (9th Cir. 2007); Ballard v. Apfel, 2000 WL 1899797, at *2 n.1 (C.D. Cal. Dec. 19, 2000) (collecting cases).  In the present case, the ALJ's findings are sufficient under either standard, so the distinction between the two standards (if any) is academic.

than <u>three</u> minutes and walking only with a cane or crutches (A.R.
173).  Plaintiff reported severe pain in her hip, low back, knees, and
heels, allegedly making it "very difficult and painful to walk" (A.R.
174).


     Yet, in an Exertion Questionnaire dated October 28, 2008,
Plaintiff reported that she spends her days cleaning her house (A.R.
169).  Plaintiff reportedly could clean for about <u>15</u> minutes before
needing to rest for at least 30 minutes due to pain in her hip, lower
back, and knees (A.R. 171).  Plaintiff reported that her Tramadol,
which she takes four times a day for pain, makes her sleepy (A.R. 169,
171). Plaintiff reported that she slowly walks <u>30 to 40 minutes</u> to a
bus stop when she has doctor appointments (A.R. 169).  Plaintiff also
reported that she "sit[s] mostly all day" (A.R. 170).  Plaintiff
indicated that she drives a manual car, but claimed that she does not
have a license and cannot drive anymore because of her knee pain (A.R.
170).  Plaintiff reported taking one nap per day for 15 to 30 minutes
(A.R. 171).  Plaintiff reported using a cane "every day; every where"
and a wheelchair when she goes to the market (A.R. 171).  Plaintiff
reported that her condition had gotten worse since her surgery (A.R.
171).


     The ALJ found that Plaintiff's medically determinable impairments
could reasonably cause Plaintiff's alleged symptoms (A.R. 16).  The
ALJ found Plaintiff's testimony concerning the extent of her
limitations less than fully credible, however.  <u>Id.</u>  The ALJ explained
that Plaintiff's testimony concerning her need for a cane and her
other exertional limitations are "notably without support from the

medical record, which are conspicuously absent severe medical
abnormalities that would account for consistent significant problems
with standing and/or walking" (A.R. 16-17).   The ALJ observed that the
cane was not prescribed, the medical record was devoid of any evidence
that Plaintiff uses her cane on a daily basis or brought her cane to
her doctors' visits,[10] and Dr. Sultan observed that Plaintiff could
get into and out of a chair without difficulty, get on and off the
examination table without difficulty, and walk across the room without
difficulty (A.R. 17).[11]   The ALJ also stated that Plaintiff's
allegations were not fully credible in light of the evidence showing
Plaintiff's eventual knee improvement with arthroscopy and injections,
the relatively mild findings with respect to Plaintiff's lumbar spine,
and the lack of medical treatment one would expect for allegedly
disabling pain (A.R. 17-18).   Although a claimant's credibility
"cannot be rejected on the sole ground that it is not fully
corroborated by objective medical evidence, the medical evidence is
still a relevant factor. . . ."   Rollins v. Massanari, 261 F.3d 853,
857 (9th Cir. 2001); see also Burch v. Barnhart, 400 F.3d 676, 681
(9th Cir. 2005) ("lack of medical evidence" can be "a factor" in

///

///

///

///

---

[10]   The only regular doctor visit at which Plaintiff
reportedly used a cane occurred on August 21, 2008, when
Plaintiff asked Dr. Brown to fill out disability forms.   See A.R.
259.   Plaintiff also used a cane for her psychological
consultative examination (A.R. 529).

[11]   See A.R. 521, 524 (Dr. Sultan's observations).

rejecting credibility, but cannot "form the sole basis").[12]

The ALJ also cited Plaintiff's failure to follow up on recommendations made by treating doctors, such as recommendations for additional physical therapy (A.R. 18).  Plaintiff testified that she did not receive physical therapy apart from therapy for one month after her knee surgery in 2008, notwithstanding the recommendation for physical therapy a year later by her treating podiatrist (A.R. 40; see also A.R. 610 (podiatrist's recommendation)).  Failure to seek medical treatment can justify an adverse credibility determination.  See Bunnell v. Sullivan, 947 F.2d 341, 346 (9th Cir. 1991); Fair v. Bowen, 885 F.2d 597, 603-04 (9th Cir. 1989); see also Molina v. Astrue, 674 F.3d 1104, 1112 (9th Cir. 2012) ("ALJ may consider. . . unexplained or inadequately explained failure to seek treatment or to follow a prescribed course of treatment" in evaluating claimant's credibility).

Finally, the ALJ also discounted Plaintiff's credibility based on inconsistencies (A.R. 19).  The ALJ cited, inter alia, Plaintiff's

_____

[12]    The ALJ cited Plaintiff's "fairly limited" daily activities as not "objectively verified with any reasonable degree of certainty," and as difficult to attribute to Plaintiff's medical condition, "as opposed to other reasons" (A.R. 18-19).  This reasoning does not add any appreciable support to the ALJ's credibility determination.  A claimant's alleged limitations on daily activities need not be subject to independent verification.  Cf. Smolen v. Chater, 80 F.3d 1273, 1282 (9th Cir. 1996) ("claimant need not . . . produce objective medical evidence of the causal relationship between the medically determinable impairment and the symptom").  If error, however, this part of the ALJ's credibility analysis was harmless error.  See Carmickle v. Commissioner, 533 F.3d 1155, 1162-63 (9th Cir. 2008) (invalid reason given for credibility determination harmless where ALJ stated other, valid reasons for the determination).

testimony that she stopped driving in 1995, and Dr. Sultan's report that Plaintiff drove herself to the appointment in 2008 (A.R. 19; see also A.R. 37-39 (ALJ questioning Plaintiff re same during administrative hearing); A.R. 520 (Dr. Sultan noting that Plaintiff was able to drive herself to the office)).  An inconsistency between a claimant's testimony and conduct can support the rejection of a claimant's credibility.  See Molina v. Astrue, 674 F.3d at 1112 (in evaluating a claimant's credibility, an "ALJ may consider inconsistencies either in the claimant's testimony or between the testimony and the claimant's conduct"); Thomas v. Barnhart, 278 F.3d 947, 958-59 (9th Cir. 2002) (same); Verduzco v. Apfel, 188 F.3d 1087, 1090 (9th Cir. 1999) (same).

Because the ALJ's credibility findings were sufficiently specific to allow this Court to conclude that the ALJ rejected Plaintiff's testimony on permissible grounds, Moisa v. Barnhart, 367 F.3d 882, 885 (9th Cir. 2004), the Court defers to the ALJ's credibility findings. See Lasich v. Astrue, 252 Fed. App'x 823, 825 (9th Cir. 2007) (court will defer to ALJ's credibility determination when the proper process is used and proper reasons for the decision are provided); accord Flaten v. Secretary of Health & Human Services, 44 F.3d 1453, 1464 (9th Cir. 1995).

## IV.   **The ALJ Did Not Materially Err in Finding that Plaintiff Can Perform Her Past Relevant Work.**

Plaintiff argues that the ALJ erred in finding that Plaintiff could perform her past relevant work because the ALJ supposedly failed

1    to account for the fact that the sewing machine operator job requires

2    the use of a pedal or knee lever.  See Plaintiff's Motion, p. 9

3    (citing DOT 786.682-070 [sic]); see also DOT 786.682-170 (DOT listing

4    for Plaintiff's past relevant work incorporates by reference duties

5    described under "Sewing-machine operator, regular equipment (any

6    industry) Master Title," which include "using a pedal or knee lever").

7    Plaintiff argues that the ALJ should have made separate findings

8    regarding whether Plaintiff is able to perform each of the activities

9    that Plaintiff's past relevant work requires.

10

11        As discussed above, substantial evidence supports the ALJ's

12   finding that Plaintiff is capable of performing the full range of

13   light work, without any further limitations regarding the use of her

14   lower extremities.  Therefore, the ALJ need not have parsed the

15   particular requirements of the light work job of sewing machine

16   operator as generally performed.  See, e.g., Dodd v. Astrue, 2012 WL

17   1438684, at *6 (D. Or. April 24, 2012) (affirming ALJ's finding that

18   claimant could perform past relevant work classified as "unskilled,

19   light" where Plaintiff retained residual functional capacity to

20   perform the full range of light work; claimant did not establish any

21   greater limitations, and the ALJ was not required further to develop

22   the demands of the claimant's past relevant work pertaining to alleged

23   limitations; the DOT and vocational expert's testimony provided

24   sufficient detail to support the ALJ's decision).

25   ///

26   ///

27   ///

28   ///

1

**CONCLUSION**

2

3        For all of the reasons discussed herein, Plaintiff's motion for

4  summary judgment is denied and Defendant's motion for summary judgment

5  is granted.[13]

6

7        LET JUDGMENT BE ENTERED ACCORDINGLY.

8

9        DATED:   July 16, 2012.

10

11                          _____/S/_____

12                          CHARLES F. EICK
                            UNITED STATES MAGISTRATE JUDGE

13

14

15

16

17

18

19

20

21

22

23

24  _____

25        [13]    The Court has considered and rejected each of
    Plaintiff's arguments.  Neither Plaintiff's arguments nor the
26  circumstances of this case show any "substantial likelihood of
    prejudice" resulting from any error allegedly committed by the
27  Administration.  See generally McLeod v. Astrue, 634 F.3d 516,
    522-23 (9th Cir. 2011) (discussing the standards applicable to
28  evaluating prejudice).